# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: August 22, 2025

```
* * * * * * * * * * * * * *   *
SAVANNA BARTON and MICHAEL BARTON  *
                                   *
Parents of A.B., a minor,          *
                                   *
            Petitioner,            *    No. 21-799V
                                   *
v.                                 *    Special Master Gowen
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
            Respondent.            *
                                   *
* * * * * * * * * * * * * *   *
```

*Patrick J. Kelly*, Conway Homer, PC, Boston, MA, for petitioner.
*Mitchell Jones*, U.S. Dept. of Justice, Washington, DC, for respondent.

## RULING ON DAMAGES[1]

On January 25, 2021, Savanna Barton and Michael Barton ("petitioners"), filed a petition for compensation under the National Vaccine Injury Compensation Program on behalf of their minor son, A.B. [2] 42 U.S.C. § 300aa-10 *et seq.*; Petition (ECF No. 1). Petitioners allege that A.B. suffered from an intussusception as a result of the rotavirus vaccine he received on March 14, 2018. Petition at Preamble. It was previously determined that petitioners successfully proved a Table intussusception case, and thus, that they are entitled to compensation for their minor child, A.B. Ruling on Entitlement (ECF No. 24); *Barton v. Sec'y of Health & Hum. Servs*, No. 21-799V, 2022 WL 830206 (Fed. Cl. Spec. Mstr. Feb. 17, 2022).

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this decision on the website of the United States Court of Federal Claims, with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that include medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18 (b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

As detailed below, I award a total of $100,000.00 in damages for past pain and suffering and $1,000.00 per year for A.B.'s life expectancy, which shall be paid in the form of an annual payment from an annuity to be purchased by the respondent. I also award a total of $1,170.32 in out-of-pocket expenses to the petitioners.

## I.    Procedural History

Petitioners filed their petition for compensation on behalf of their minor child on January 25, 2021. (Petition). Thereafter, petitioners filed medical records and affidavits to support their case. Respondent filed his Rule 4(c) Report on February 2, 2022, indicating that petitioners have "satisfied the criteria set forth in the Vaccine Injury Table…and the Qualifications and Aids to Interpretation." Resp't R. 4(c) Rept. (ECF No. 21). A Ruling on Entitlement finding that petitioners are entitled to compensation was issued along with a Damages Order on February 17, 2022. Ruling on Entitlement; Damages Order (ECF No. 25). After the parties were unable to informally resolve damages, petitioners filed a Memorandum in Support of Damages on April 5, 2023, requesting that petitioners be awarded $144,000.00 in past pain and suffering, $1,000.00 per year for the remainder of A.B.'s life in future pain and suffering, reduced to net present value, and $1,170.32 in past unreimbursed expenses. Pet'r Mem. in Supp. of Damages at 38 (ECF No. 40). Respondent filed a Response on June 30, 2023, arguing that petitioners should be awarded $50,000.00 in pain and suffering and $775.16 in unreimbursable expenses. Resp't Resp. at 9 (ECF No. 42). Petitioners filed a reply to respondent's response on July 13, 2023. (ECF No. 43). The case was reassigned to my docket on January 3, 2025. Notice of Reassignment (ECF No. 48). I held a status conference with the parties on June 4, 2025, to discuss the issues in resolving damages, and the parties requested that the Court issue a Decision on Damages.

The matter is now ripe for adjudication.

## II.    Factual History

A.B. was born on November 13, 2017 Pet'r Ex. 6 at 1. On March 14, 2018, A.B. received the second dose of the oral rotavirus vaccine. Two days later, on March 16, 2018. Mrs. Barton called A.B.'s pediatrician, reporting that A.B was fussy, not eating, and had diarrhea. Pet'r Ex. 6 at 394. Specifically, Mrs. Barton noted that A.B. appeared pale and had a high pitch cry. *Id.* Mrs. Barton recalled in her affidavit that later that day, A.B. awoke after a ten-minute nap "with a painful blood curdling shriek." Pet'r Ex. 12. A.B. had vomited all over himself, and, when Mrs. Barton went to change A.B.'s diaper, it "was full of bright red blood." *Id.* She was instructed to bring A.B. to the emergency room.

A.B. was examined at the Mahoning Valley Hospital Emergency Department.  There was tenderness in the periumbilical area, and a hard mass in the lower right quadrant and upper left

2

quadrants, with guaiac positive stool[3] and red fluid flowing from the rectum. The physicians diagnosed an intussusception and contacted the Children's Hospital of Akron. They arranged for air transport because of significant deterioration and the likely need for prompt surgical attention.

Upon arrival at Children's Hospital of Akron, the physicians reviewed an ultrasound image showing a gas pattern consistent with an extensive ileocolic intussusception extending to the rectum with frank blood dripping from the rectum. Surgery was notified. The child was sent to radiology where an air contrast enema was attempted three times in an effort to reduce the intussusception without success. The following day, March 17, 2018, A.B. was taken to the operating room. They had significant difficulty in placing the necessary IVs for surgery, with only one IV in the right lower extremity placed despite efforts at multiple locations. Ultimately, the right subclavian vein was accessed with a 21-gauge needle and guidewire placed under fluoroscopy and a central venous catheter was placed.

The abdominal surgery began laparoscopically and the surgeon observed that the right side of the colon was not on the right side and the cecum was hypermobile and  had crossed over the midline. There was an ileocolic intussusception. Two additional ports were placed in the right upper and lower quadrants in an attempt to reduce the intussusception laparoscopically, but without success, as the intussusception was too swollen. The surgery was converted to an open procedure through a right incision about 2 centimeters above the umbilicus extending across the midline. The bowel was eviscerated, and the ileocolic intussusception was confirmed. Then the bowel was milked out. The cecum and appendix were also intussuscepted into the right colon. All were reduced. The cecum was edematous and bruised but appeared viable as did the ileum. After the intussusception was reduced the right colon, the cecum, transverse colon, and the sigmoid colon were in place and properly attached. The bowel was then replaced, and the incision was closed. The surgery took four hours and 17 minutes. Pet'r Ex 6 at 185-87.  A.B. remained hospitalized until March 22, 2018.

Subsequent to his hospitalization, A.B. had multiple medical appointments over the succeeding years with complaints of diarrhea and at time constipation. He had consultations with the surgeon, his family doctor and a pediatric gastroenterologist in treating these issues.  His toilet training was prolonged. In the weeks following the surgery, he was described as having very loose, mucous filled stools and periodically had the high-pitched cry which was similar to that at the onset and was different from his normal cry.  He had multiple medical visits documenting several days of prolific diarrhea. He was also noted to have diarrhea in conjunction with antibiotic use and intermittent constipation. As late as his five year old well child visit in 2023, the note recorded a long history of intermittent loose stools with hard stools.  A.B. is now

---

[3] Guaiac is indicative of occult blood in the stool.

finally toilet trained, and sometimes his stools are stuck when he tries to pass them. Pet'r Ex. 17 at 9-10.

### III.    Discussion

#### a.  Pain and Suffering

The Vaccine Act provides that a petitioner may recover "for actual and projected pain and suffering and emotional distress from the vaccine-related injury an award not to exceed $250,000." 42 U.S.C. § 300aa–15(a)(4). There is no mathematical formula for assigning a monetary value to a person's pain and suffering. *I.D. v. Sec'y of Health & Human Servs*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. Dec. April 19, 2013). A "continuum of injury" approach to pain and suffering damages, where the cap was reserved for the most severe injuries and lower awards were made for less severe injuries, was created with a goal "to fairly treat all petitioners." *Hocraffer v. Sec'y of Health Human Servs.*, No. 99-533V, 2007 WL *914914, at *5 (Fed. Cl. Spec. Mstr. Feb. 28, 2007). However, the Court of Federal Claims later determined that this the "continuum" approach was not "rooted in statute or precedent." *Graves v. Sec'y of Health and Human Servs.,* 109 Fed. Cl. 579, 590 (2013).

In *Graves*, the Court set forth a different approach in which the first step is to assess an individual petitioner's pain and suffering by looking to the evidence on the record, without regard to the $250,000 cap. *Id.* at 589-90 Only then as a second step, if the award would exceed $250,000, must it be reduced to that maximum. *See id.* Though not binding on special masters, the *Graves* approach has been found to be persuasive and is now the prevailing approach used. *See, e.g.*, *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *10 (Fed. Cl. Spec. Mstr. Moran April 19, 2013) ("Under the interpretation of the statute offered in *Graves*, cases that used the spectrum approach, such as *Hocraffer* and *Long*, are no longer useful measuring points"); *Reed v. Sec'y of Health & Human Servs.*, No. 16.1670V, 2019 WL 1222925, at *12 (Fed. Cl. Chief Spec. Mstr. Dorsey Feb. 1, 2019) ("it must be stressed that pain and suffering is not based on a continuum"); *Selling v. Sec'y of Health & Human Servs.*, No. 16-588V, 2019 WL 3425224, at *5 (Fed. Cl. Spec. Mstr. Oler May 2, 2019) ("Pain and suffering is not, however, determined based on a continuum"); *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2019 WL 4072069, at *13 (Fed. Cl. Spec. Mstr. Corcoran July 29, 2019) ("… special masters have generally accepted *Graves*'s methodology since issuance of that decision… I will apply it herein as well, although I do so mindful of the need to consider the overall strength of petitioner's showing herein"), *rev'd and remanded on other grounds*, 147 Fed. Cl. 131 (2020); *W.B. v. Sec'y of Health & Human Servs.*, No. 18-1364V, 2020 WL 5509686, at *3 (Fed. Cl. Chief Spec. Mstr. Corcoran Aug. 7, 2020) ("it must be stressed that pain and suffering is not based on a continuum"). I have applied this approach as well, however, as the award in this case does not approach the cap, these cases are not important to this decision other than to the extent that they stand for the proposition that pain and suffering should be decided based on the evidence in the case and without regard to a cap or a continuum.

4

In assessing the entire record in awarding damages for pain and suffering, factors to consider include "(1) the ability to understand the injury . . . (2) the degree of severity of the injury; and (3) the potential number of years the individual is subjected to the injury." *I.D.*, 2013 WL 2448125 at \*9 (internal citations omitted). I find it appropriate to also consider any impairments in function and/or lost ability to participate in activities which the petitioner previously enjoyed, as a result of the injury.

Petitioners primarily rely on two cases, *Brooks v. Sec'y of Health & Hum. Servs* and *Neiman v. Sec'y of Health and Hum. Servs*, in their request for $144,000.00 in past pain and suffering and $1,000.00 per year for the remainder of A.B.'s life in future pain and suffering. Notably, the facts of these two cases are remarkably similar to the facts of the instant case. *See Brooks v. Sec'y of Health & Human Servs.*, No. 14-563V, 2016 WL 2656110 (Fed. Cl. Spec. Mstr. Feb. 26, 2016); *Neiman v. Sec'y of Health & Human Servs.*, No. 15-631V, 2016 WL 6459618 (Fed. Cl. Spec. Mstr. Aug. 22, 2016).  As in the present case, both of these cases involved substantial abdominal surgery. The primary differentiating fact is that the children in *Brooks* and *Neiman* had sections of necrotic bowel and portions of the bowel was removed in both cases, while A.B. did not require resection of bowel or other organs Otherwise, the clinical courses of the children in  those cases, and their residual symptoms are very similar to those  of A.B.

Pain and suffering damages are subjective. In the instant case, it is important to bear in mind that such damages are for the pain and suffering of A.B. only, as the Vaccine Program only compensates the vaccinee. While very distressful for the parents, the Act provides damages only for the child.  There can be little doubt that A.B. suffered significant pain at the time of the intussusception. While the infant cannot verbally explain his pain, the sudden high pitched and shrill cry is often noted in conjunction with an intussusception and appears to be associated with severe abdominal pain when it occurs. The intussusception in this case resulted in the right colon, cecum, and appendix being pushed from the right side of the abdominal cavity to the left and extended all the way to the rectum from which physicians observed blood to be flowing. The surgery involved a complicated process of obtaining adequate IV access prior to entering the abdominal cavity with attempts made at multiple locations and ultimately requiring access for a central catheter through the subclavian vein. Once the abdominal surgery began three, laparoscopic ports were opened to try to reduce the intussusception which, because it was so swollen, was not any more successful then the three attempts at reduction by air contrast enema. A transverse incision was then made to perform an open procedure.

The persistent problems with diarrhea and constipation which have occurred and likely will continue to some degree also cause discomfort as did the severe rash on the buttocks that occurred several times in conjunction with the diarrhea. It is unlikely that A.B. will remember the acute incident given his age at the time. However, he likely is quite aware of the bowel management issues he has experienced. He also has a sizable transverse surgical scar about an inch or so above the umbilicus and extending approximately six to eight inches across the abdomen.  The incision has healed well but the scar remains visible as of photos taken in 2023 and about which he may be self-conscious as he grows older.

5

A.B. underwent an extensive surgery to address the severe displacement of his bowel, right colon, cecum and appendix caused by the extensive intussusception.  He has continued at least through his five-year-old well child visit to have periodic issues with diarrhea and constipation and has a sizable scar above the umbilicus and across his abdomen which will be permanent.  He undoubtedly endued significant pain up to and subsequent to the extensive surgery he underwent and continues to have bowel management problems.  Thus, I find an award of $100,000.00 in past pain and suffering to be appropriate.

.

As the two children in *Brooks* and *Neiman*, A.B. continues to suffer from some residual gastrointestinal problems, especially in conjunction with taking antibiotics for illnesses.  He had multiple medical appointments complaining of significant diarrhea. As noted at A.B.'s 5-year-old well child visit on January 13, 2023, he has a "long history of loose stools with hard stools" and "sometimes his bowels are stuck as he tries to pass them." Pet'r Ex. 17 at 10. Earlier records support the notation that A.B. has a long history of bowel issues. Specifically, at an appointment on December 9, 2020 among others, it was noted that A.B. "has some diarrhea secondary to antibiotics." Pet'r Ex. 15 at 201. It is likely that he will continue to suffer similar symptoms periodically over his lifetime. This is also consistent with the clinical courses in the *Brooks* and *Neiman* children. Therefore, I find that an award of $1,000.00 per year for the life of A.B. is an appropriate award for future pain and suffering.

**Accordingly, I award $100,000.00 in past pain and suffering and $1,000.00 per year over the life of A.B. in future pain and suffering.**

### b.  Past Unreimbursed Expenses

The Vaccine Act contemplates out of pocket unreimbursable expenses which:

(i)     Resulted from the vaccine-related injury for which the petitioner seeks compensation.

(ii)    Were incurred by or on behalf of the person who suffered such injury; and

(iii)   Were for diagnosis, medical or other remedial care, rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial case and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary.

42 U.S.C. § 15 (a)(1)(B)(i-iii). In their memorandum in support of damages, petitioners request $1,170.32 in past unreimbursed expenses "including mileage for travel to and from Akron Children's Hospital during A.B.'s admission and his subsequent medical visits, as well as payments for outpatient medical visits." Pet'r Mem. in Supp. of Damages at 20. Petitioner also provided supporting documentation for these expenses. Pet'r Ex. 19, Tabs A-B (ECF No. 38-2).

Specifically, petitioner submitted evidence of out-of-pocket expenses in the amount of $238.22 for visits with A.B.'s gastroenterologist, Dr. Kent. Pet'r Ex. 19 Tab A. Petitioners also request $932.10 in mileage reimbursement for travel to Akron Children's Hospital. Pet'r Ex. 19 Tab B. Petitioners note in their memorandum that they used the IRS business mileage rate for their claim for mileage costs. The use of the IRS business mileage has been found to be reasonable in several recent cases by the Chief Special Master, as opposed to the IRS medical mileage rate. *See e.g., Walter v. Sec'y of Health & Hum. Servs.*, No. 20-1461V, 2024 WL 1299576, at *5 (Fed. Cl. Spec. Mstr. Feb. 27, 2024). Moreover, in the present case, respondent did not contest petitioner's use of the business mileage rate and made no argument for the use of the medical mileage rate instead. Therefore, I find it reasonable to use the IRS business mileage rate.

In his response to petitioner's memorandum, respondent proposed "an award of $775.16," with no explanation as to how that number was reached, and no argument as to why the full amount of petitioners' proposed unreimbursable expenses should not be compensated. The expenses submitted were either for reimbursement of the cost of care with a gastroenterologist and for the parent's travel costs for multiple outpatient medical visits secondary to issues arising from bowel dysfunction and for Mr. Barton's travel expenses in driving twice a day to Akron Children's Hospital from their home. These expenses were incurred in caring for the child, and accordingly I find that they are reasonable and appropriate. Therefore, I find that petitioners' documented out of pocket expenses are reasonable and were related to the vaccine injury. **Thus, I award a total of $1,170.32 in past unreimbursable expenses to the parents.**

### IV.    Form of Award

Compensation may be awarded by way of annuity or in another manner "determined by the special master to be in the best interests of the petitioner." § 15(f)(4)(B). Given the age of A.B., I find it to be in the best interest of A.B., that $100,000 in past pain and suffering be awarded in lump sum upon establishment of an appropriate minor's trust account for  A.B. as may be required under the state law of Ohio and that the $1,000 per year in future pain and suffering for the remainder of A.B.'s life shall be provided in the form of annual payments from an annuity. The annuity is to be purchased by the respondent with the requirement that it pay $1,000.00 per year in each year of A.B.'s life on his birthday in that year. The reimbursement of expenses as noted above shall be paid to the petitioners.

### V.    Conclusion

For the reasons above and based on consideration of the record as a whole, I find that $100,000 represents a fair and appropriate amount of compensation for A.B's past pain and suffering and that $1,000 per year over the life of A.B. represents a fair and appropriate award

for future pain and suffering. I also find an award of $1,170.32 for past unreimbursable expenses incurred by the petitioner's in pursuing treatment for A.B. to be reasonable.

**The parties shall file a proffer incorporating this ruling that will be the basis for awarding compensation to A.B. within 30 days, by <u>Wednesday, September 22, 2025</u>.**

Thereafter, a damages decision will be issued.

**IT IS SO ORDERED.**

<u>s/ Thomas L. Gowen</u>
Thomas L. Gowen
Special Master